

*U.S. Department of Justice*

*United States Attorney
Eastern District of New York*

JAJ:CHB/SA                             *271 Cadman Plaza East
                                       Brooklyn, New York  11201*

October 6, 2011

By ECF

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

            Re:  United States v. Ronald Herron
                 Criminal Docket No. 10-615 (S-2)(NGG)

Dear Judge Garaufis:

        In October 2010, defendant Ronald Herron and various others were charged in a superseding indictment related to their involvement in a criminal conspiracy that distributed narcotics and possessed firearms in the Gowanus Public Housing Development in Brooklyn.  In the government's detention letter, the government alleged, among other things, that the defendant was the leader of this organization, that members of the organization were involved in multiple acts of violence, including murder, and that the defendant was also affiliated with the "Murderous Mad Dog" set of the violent street gang known as the Bloods.

        In April 2011, the defendant filed a pro se motion contesting the jurisdiction of the federal government and the Court and asserting that he was a separate sovereign.  After the Court directed defense counsel to address the issues raised by the motion directly with the defendant, the defendant elected to maintain his pro se motion.  In addition, on August 3, 2011, counsel for the defendant filed a letter advising the Court regarding "ongoing matters which may impact [his] ability to serve as Mr. Herron's attorney."  Among other things, counsel stated that Mr. Herron had "forbidden [counsel] to take steps in defense of this matter," including "not to take action to move the matter to trial; nor to engage in or discuss plea negotiations," "not undertake factual investigation," "not to participate in jury selection, cross-examine government witnesses, or to present evidence for the defense," and "not to present opening or closing statements."  Counsel further stated that he had advised the defendant that the defendant's position

necessarily impacted his ability to act as his attorney and that the defendant "will have to act pro se if he does not permit [counsel] to proceed."

On August 5, 2011, the Court held another status conference in the case and took up the issues of the defendant's pro se motion and his representation by counsel. The Court first denied the defendant's pro se motion in its entirety. The Court further advised the defendant that the Court could appoint another attorney to represent the defendant and that proceeding pro se carried significant risks in light of the serious charges against the defendant. The Court then directed the defendant to consider the issue in further detail and scheduled another status conference for September 28, 2011.

At the September 28, 2011 status conference, counsel for the defendant informed the Court that the defendant's position remained unchanged. The Court then inquired of defense counsel whether the defendant wished to have another attorney appointed for him or whether he wished to proceed pro se, to which defense counsel responded that he believed the defendant was not interested in either option. The Court then inquired directly of the defendant whether the defendant wished to have new counsel appointed or to represent himself. In response to the Court's inquiry, the defendant refused to engage directly with the Court and instead persisted in maintaining that the Court lacked jurisdiction over him. See, e.g., Tr. at 6 ("I'm a free sovereign man and a political power").

In response, the Court informed the defendant that the case was proceeding to trial, that the defendant would be "well-advised to accept the assistance of counsel," that the Court would "appoint another lawyer as counsel if [the defendant] so desires, or will appoint a lawyer to act as a legal advisor if he wishes to represent himself." The Court then directed the defendant again to "thoughtfully consider his current position and advise the Court at the next status conference ... as to whether he would like the Court to appoint other counsel, or whether he would like to proceed pro se with a legal advisor who the Court will appoint to advise him." The Court further directed the government to submit a letter advising the Court of the best manner in which to proceed when the defendant "chooses to do nothing" in his case.

The government submits this letter in response to the Court's instructions. The defendant has a constitutional right to represent himself in a criminal proceeding. See Faretta v. California, 422 U.S. 806 (1975); see also Adams v. United States,

317 U.S. 269, 280 (1942) (insisting that a defendant accept counsel "is to imprison a man in his privileges and call it the Constitution"). However, to invoke that right the defendant must make an unequivocal and timely request. See Wilson v. Walker, 204 F.3d 33, 37 (2d Cir. 2000); Williams v. Bartlett, 44 F3.d. 95, 100 (2d Cir. 1994). In Williams, the Second Circuit noted that:

> the purpose of requiring that a criminal defendant make an 'unequivocal' request to waive counsel is twofold. First, unless the request is unambiguous and unequivocal, a convicted defendant could have a colorable Sixth Amendment appeal regardless of how the trial judge rules: if his request is denied, he will assert the denial of his right to self-representation; if it is granted, he will assert the denial of his right to counsel. Second, the requirement of an unambiguous and unequivocal request inhibits any 'deliberate plot to manipulate the court by alternatively requesting, then waiving counsel.'

Id. at 100 (citations omitted). A court should inquire directly of the defendant so that the court can determine that the defendant's invocation of his right to proceed pro se is knowing and rational and that the defendant appreciates the dangers of proceeding without counsel. See United States v. Schmidt, 105 F.3d 82, 88 (2d Cir. 1997).

Thus far, the defendant has not made an unequivocal invocation of his right to represent himself. Cf. Torres v. United States, 140 F.3d 392, 402 (2d Cir. 1998) (noting that a defendant's "decision not to participate in the proceedings did not undermine her knowing and intelligent waiver. Indeed, it is clear that she exercised her right to defend herself so that she could further her political objectives.") Indeed, the defendant accepted court-appointed counsel when he was first arrested in this case. Nevertheless, since that time and when questioned directly by the Court, he has scrupulously avoided making any specific statement on the subject of his representation by counsel and instead continues to contest the jurisdiction and authority of the Court. Absent an unequivocal invocation of one's right to proceed pro se, and a knowing and intelligent waiver of that right, a defendant should continue to be represented by counsel.

Nevertheless, in light of the defendant's directions to his counsel in his August 3, 2011 letter, the government respectfully requests that the Court make the defendant aware of the consequences of his refusal to engage in any meaningful colloquy with the Court regarding his right to represent himself.  In McKaskle v. Wiggins, 465 U.S. 168, 177 (1984), a case involving the participation of stand-by counsel, the Supreme Court noted that, in considering whether a defendant's right to represent himself has been respected, "the primary focus must be on whether the defendant had a fair chance to present his case in his own way."  See id. at 174 ("The Counsel Clause itself ... implies a right in the defendant to conduct his own defense, with assistance at what, after all, is his, not counsel's trial."); see also Torres, 140 F.3d at 402-403 (noting defendant's "well-articulated choice to represent herself guaranteed that she would maintain control over her defense"). Here, the defendant's representation by counsel necessarily means that his counsel will be permitted (and indeed, is constitutionally obligated) to make a panoply of strategic decisions related to the manner in which the defendant's trial will proceed and that may necessarily conflict with the defendant's directions to his counsel in his August 3, 2011 letter.  See, e.g., Taylor v. Illinois, 484 U.S. 400, 418 (1988) ("The adversary process could not function effectively if every tactical decision required client approval."); United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987).  In short, the authority and control of those strategic decisions related to jury selection, jury addresses, the cross-examination of witnesses, and the presentation of evidence are necessarily implicated by the defendant's directions to his counsel and his decision whether to proceed pro se.

Because the defendant's position in his counsel's August 3, 2011 letter reflect a desire "to conduct his own defense," "to present his case in his own way" and "maintain control over [his] defense," see McKaskle, 465 at 174 & 175, Torres, 140 F.3d at 403, the government recommends that the Court discuss with the defendant whether he intends to maintain such a position at trial, and if so, how that position may conflict with counsel's obligations, and further, whether the defendant understands his ability to appear pro se with the assistance of stand-by counsel at trial.  See McKaskle, 464 U.S. at 168; United States v. Mills, 895 F.2d 897, 904-905 (2d Cir. 1990).

4

Finally, the government further notes that "the right to self-representation is not without limits." See Clark v. Perez, 510 F.3d 382, 395 (2d Cir. 2008). The right to proceed pro se does not permit the defendant to "abuse the dignity of the courtroom." Faretta, 422 U.S. at 834 n.46. Further, the Court

> may deny the right to act pro se where the defendant deliberately engages in serious and obstructionist misconduct or is not able and willing to abide by rules of procedure and courtroom protocol.

Clark, 510 F.3d at 395 (citations and quotations omitted).

The government will be prepared to address these issues in more detail at the next status conference before the Court.

    Respectfully submitted,

    LORETTA E. LYNCH
    United States Attorney

By: /s/
    Carter Burwell
    Shreve Ariail
    Assistant U.S. Attorneys
    (718) 254-6313/6616

cc: Clerk of Court (NGG) (by ECF)
    Robert Soloway, Esq. (by ECF)

Case 1:10-cr-00615-NGG   Document 173   Filed 10/06/11   Page 6 of 6 PageID #: 476