

U.S. Department of Justice

United States Attorney
Eastern District of New York

SA:SPN/RTP
F.#2010R01491

271 Cadman Plaza East
Brooklyn, New York 11201

May 1, 2014

By Hand and ECF

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Ronald Herron, 10-CR-615 (NGG)

Dear Judge Garaufis:

      The government respectfully submits this letter at the Court's direction to further specify the evidence it seeks to offer of the defendant's obstruction in the government's case-in-chief. As an initial matter, and as set forth in the government's prior submission to the Court, evidence of Herron's efforts to destroy evidence, intimidate witnesses and to otherwise obstruct justice is powerfully probative of (1) the existence of the charged criminal enterprise; (2) Herron's role at the top of the enterprise; (3) the enterprise's efforts to "[p]reserve[e] and protect[]the power, territory and criminal ventures of the enterprise through the use of intimidation, threats of violence and acts of violence," Indictment ¶ 4; and (4) the enterprise's ability to "[k]eep[]victims and rivals in fear," id. ¶ 5.

      Moreover, such evidence is also directly relevant to two of the homicides charged in the indictment, specifically, the June 16, 2001 murder of Frederick Brooks, charged as Racketeering Act Three and in Counts Five, Six and Eight, and the May 9, 2008 murder of Richard Russo, charged as Racketeering Act Six and in Counts Twelve, Thirteen and Fifteen.

      Such evidence includes the following:

**1. Testimony Regarding Obstruction Following the Brooks Homicide**

      The government seeks to introduce witness testimony establishing that, after he murdered Frederick Brooks, Herron began a brazen campaign to obstruct justice during

which hedestroyed evidence and threatened potential witnesses, and that Herron continued to obstruct justice long after he was arrested and charged with the homicide in state court. The government intends to elicit testimony at trial that, while on the street, Herron worked with members of his criminal enterprise and others in Gowanus and Wyckoff developments to dispose of the firearm he used to kill Frederick Brooks. Additionally, witnesses will testify that, while in jail awaiting trial, Herron sent members of his crew and others to threaten witnesses who were to testify against him. Witnesses A and B, whose likely testimony is detailed in the government's prior submission, will also testify that Herron personally threatened them, and that, as a result, they refused to testify against him in Herron's state court trial for the Brooks murder. Additionally, Witness C, who understood that Herron would have sought to kill him had he agreed to testify against him, will testify that Herron instructed him to lie about Herron's involvement in the murder.

### 2. Testimony Regarding the Russo Homicide

Witness C will also testify that, after the murder of Richard Russo, Herron provided cash to him in an effort to keep him from approaching the police. Likewise, Witness C will testify that Herron made efforts to eliminate forensic evidence and disposed of the firearm that he had used to kill Russo.

### 3. Additional Enterprise Evidence

The government intends to offer additional testimonial and physical evidence to establish that Herron publicly warned members of his organization and the public, through social media and other means, of the consequences of providing information to law enforcement regarding Herron and the enterprise's involvement in criminal activities. For example, a witness will testify that Herron even threatened to kill a member of his own organization on themistaken belief that he/she had provided information to law enforcement about Herron.

In addition to being directly probative of the charged enterprise and the Brooks and Russo murders, the above-referenced evidence is also is admissible to "complete the story of the charged crime[], demonstrate relationships of trust and corroborate the testimony of cooperating witnesses." United States v. Basciano, 03 CR 929 (NGG), 2006 WL 385325, at *10 (E.D.N.Y. Feb. 17, 2006). In particular, the above-described acts of obstruction demonstrate that Herron was able to rely on the members of his organization, and on the hierarchy he implemented, to protect himself from law enforcement and stoke his reputation in the community as a violent, powerful, and untouchable leader.

The destruction of evidence and especially the intimidation of witnesses also furthered the goals of the enterprise by protecting Herron's place atop the organization and thereby permitting the membership to continue to profit from the sale of narcotics. That members in the enterprise were willing to commit violent acts, at significant risk to themselves, to cover Herron's crimes also demonstrates the relationships of trust he cultivated in the organization. With respect to the particular crimes the investigation and

prosecution of which Herron sought to obstruct, his conduct and that of his underlings also reflects consciousness of guilt. In addition, such conduct also helps to explain how Herron was able to commit so many crimes over such an extended period of time with seeming impunity. Herron survived because he was willing to threaten witnesses to escape responsibility for his crimes—because, as alleged in the indictment, the "[m]embers of the enterprise and their associates committed, attempted to commit and threatened to commit acts of violence . . . to enhance the enterprises's prestige and protect and expand the enterprise's criminal operations." Indictment ¶ 5 Herron's reputation for manipulating the criminal justice system served him well, as civilian witnesses proved unwilling to testify in the face of his threats and members of his criminal organization were unwilling to cooperate with law enforcement officials for many years for fear of violent reprisal.

The jury cannot fully understand the nature of the Ronald Herron Enterprise without understanding the lengths Herron and his criminal associates were willing to go to protect the enterprise and its criminal business. In this respect, the above-described obstruction evidence is inextricably intertwined with evidence of the charged offense. The Second Circuit has explained that "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997). Accordingly, "[r]elevant evidence is not confined to that which directly establishes an element of the crime." Id.; see also Fed. R. Evid. 401, 402. Indeed, as the Supreme Court has recognized, in analyzing the admissibility of evidence, the trial court should make its determinations "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." Old Chief v. United States, 519 U.S. 172, 183 (1997).

As such, the government requests that the Court rule that such evidence is admissible by the government at trial.

    Respectfully submitted,

    LORETTA E. LYNCH
    United States Attorney

By:    /s/
    Shreve Ariail
    Samuel P. Nitze
    Rena Paul
    Assistant U.S. Attorneys
    (718) 254-6616/6465/7575