# ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP

Attorneys at Law
100 Lafayette Street, Suite 501
New York, NY 10013

FRANKLIN A. ROTHMAN

JEREMY SCHNEIDER

ROBERT A. SOLOWAY

DAVID STERN

LUCAS ANDERSON

Tel: (212) 571-5500
Fax: (212) 571-5507

May 5, 2014

Hon. Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    USA v. Ronald Herron
       10 Cr. 615 (NGG)

Dear Judge Garaufis:

The government has moved for an order precluding the defendant from offering the testimony of Dr. James Peterson, Ph.D., as an expert witness with respect to rap lyrics and the related video and music evidence which the government intends to offer at trial. It is respectfully submitted the government's motion should be denied.

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

The reason the proffered expert should be permitted to testify depends largely on the unfairness which will result from exposing jurors to government-selected excerpts of the defendant's video and musical material without explanation and clarification to place the material in context. This context will derive from the expert's study of the history, structures, and traditions inherent in rap music and hip hop culture.

The government states it intends to introduce:

> portions of the defendant's rap lyrics and related video content in which the defendant and members of his criminal enterprise are shown associating together, discussing their relationships to each other, and referencing specific aspects of criminal conduct in the superseding indictment.

(Gov't Motion to Preclude at p. 2.)

However, the music and video content was not only created and widely disseminated by the defendant as entertainment and to promote the defendant's music career and fictional image, but we have already noted as well in a prior motion to preclude that studies show substantial biasing effects on subjects exposed to violent rap lyrics and related content. See, Stuart P. Fischoff, *Gangsta Rap and a Murder in Bakersfield*, 294 J. of Applied Soc. Psychology, 795 (1999)(detailing the author's study of the biasing effects on how a murder defendant's personality is viewed when study subjects were exposed to rap lyrics authored by defendant containing violent, misogynist content).

Equally significantly, the government's position that the proffered testimony fails to meet the requirements of F.R.E. 702 is wrong, and the government arguments miss many salient points.

First, the government <u>partially</u> quotes from the defense expert notice, stating the defense offers an expert to opine that "rap lyrics may not be taken as expressions of truth," but fails to include the remainder of the notice's sentence, which reads, "by virtue of being stated or sung by the artist." For it is the specific intention of the rap music artist to establish authenticity as a "gangster" in order to conform to the specific strictures of the form, and therefore, purportedly autobiographical statements, *in that specific medium*, should not be taken at face value. Despite the government's simplistic conclusion that our position is absurd because we may argue such conclusions on sum-

mation and they are within the ken of the average juror, such assertions contradict studies which state that the opposite of the government's position is true.[1]

Dr. Peterson, however, as the government incorrectly suggests, will not testify that gangsta rap lyrics can never have evidentiary value or are never true. In fact, the opposite is the case. His expert testimony will be that such lyrics and statements are not *necessarily* true. While the government suggests this is obvious, such obviousness is not the conclusion of the studies which we have identified and discussed in our prior motion to preclude.

Clearly our proffered expert will <u>not</u> opine that the defendant is innocent of the charges, or he is not guilty based on the content of his lyrics or because the government proof comes partially in the form of music lyrics. The relevant knowledge he possesses which will assist the trier of fact does not extend to such matters.

Indeed, the fatal flaw of the government argument is illustrated in the quote lifted by the government from a *Huffington Post* panel interview in which Dr. Peterson participated. (Govt Ltr at p.3). In that discussion, Dr. Peterson -- as do many commentators and scholars -- calls into question the fairness and evidentiary validity of the use of gangsta rap lyrics in the criminal justice system, stating:

> The music itself is by design supposed to be about authenticity, especially when you are talking about the more hardcore or more violent rap or more hyper-masculine rap. Its about authentic narratives about oneself. But you have to understand from an artis-

---

[1]

Also, Professor Andrea L. Denis, *Poetic (In)justice? Rap Music Lyrics as Art, Life, and Criminal Evidence*, 31 Columbia J.L. & Arts 1 (2007), a scholarly critic of such reasoning and advocate for the use of expert testimony where rap lyrics are admitted in evidence, notes, "[A] defendant forced to make a closing argument lacking evidentiary support [of an expert] is a lame duck. Such an argument would likely draw from the prosecution an objection that such an argument relies on facts not in evidence. Moreover, an unsupported argument would likely carry little persuasive weight with jurors." <u>Id</u>. at 39.

tic perspective, they are taking license all day
everyday.  This is why its not reliable as evidence.

Later in the discussion, the moderator raises the issue of
"terroristic threats" and points to a case involving a college
student who abandoned a car in which police discovered lyrics which
read, "If this account doesn't reach $50,000 in the next seven days
then a murderous rampage similar to the Virginia Tech shooting will
occur at another highly populated university.  This is not a JOKE!"

The defendant was convicted of making a terroristic threat.
Dr. Peterson begins his response on the topic, "its hard for me to
understand how that's art."  He opines that evidentiary conclusions
should be made on a case by case basis, and notes that if lyrics
"directly pertain to evidence in the case, then obviously it should
be used."

We have no quarrel with this principle, and it escapes us how
Dr. Peterson's own statements support excluding his testimony as an
expert witness as argued by the government.  Indeed, the argument
seems to illustrate that the government has mis-identified the
issue in dispute.  The issue here is whether the evidentiary
landscape of this case calls for a defense expert to testify, and
whether the pertinent rules authorize it, not whether such an
expert would establish such lyrics should never be admissible.  The
government clearly has material from the proposed expert's own
prior statements which will elicit a response from him, if he is
asked, that he does not support a blanket evidentiary exclusion of
all pieces of writing somebody might choose to call a music lyric.
That is not the general area with which his testimony is concerned,
nor is it the issue the Court is called upon to resolve.  Moreover,
the areas within which the Court has discretion to permit expert
testimony are broad, as reflected by the Rule's Advisory Committee
Notes, which call upon the Court to determine whether the testimony
will in some manner assist the fact-finder:

> If the expert purports to apply principles and
> methods to the facts of the case, it is important
> that this application be conducted reliably. Yet it
> might also be important in some cases for an expert
> to educate the fact-finder about general principles,
> without ever attempting to apply these principles to
> the specific facts of the case. For example, experts
> might instruct the fact finder on the principles of

> thermodynamics, or blood-clotting, or on how
> financial markets respond to corporate reports,
> without ever knowing about or tying to tie their
> testimony into the facts of the case. The amendment
> does not alter the venerable practice of using
> expert testimony to educate the fact-finder on
> general principles. For this kind of generalized
> testimony, Rule 702 simply requires that: (1) the
> expert be qualified; (2) the testimony address a
> subject matter on which the fact-finder can be
> assisted by an expert; (3) the testimony be
> reliable; and (4) the testimony "fit" the facts of
> the case.

Fed. R. Evid. 702 (amended 2000), Advisory Committee Notes. These
threshold requirements are met in this case with respect to Dr.
Peterson, and that is why he should be permitted to testify.

Significantly, in *United States v. Wilson*, 493 F.Supp.2d 484
(E.D.N.Y. 2006), this Court has published the only opinion we have
been able to identify which specifically discusses the use of an
expert on the subject of rap music in a case in which the
prosecution offered rap lyrics as evidence of guilt.[2] The defense
application to call the expert in *Wilson* was denied based on
untimeliness of the expert notice. *Wilson*, 493 F.Supp. at 489.
However, this Court discussed the merits as well, noting:

---

[2] As noted, Professor Denis, *Poetic (In)justice? Rap Music Lyrics
as Art, supra,* discusses the use of rap lyrics by prosecutors, and
advocates the admission by courts of expert testimony on the
subject. She states, "At least one court permitted defense-offered
expert testimony regarding the interpretation and import of rap
music lyrics," 31 Columbia J.L. & Arts at 37, citing a South
Carolina Supreme Court decision, *State v. Cheesboro*, 552 S.E.2d 300
(S.C. 2001). A review of that case reveals that rap lyrics were
introduced against the defendant, which the Supreme Court of South
Carolina on review held to have been error, but harmless. On the
subject of defense evidence, the opinion notes only, "After the
trial judge ruled [the lyrics] admissible, appellant *put up
evidence* that violent lyrics are common to rap music and suggested
an innocuous explanation of the words having to do with appellant's
role in the music industry." [Emphasis added]. No further
illumination of the matter appears in *Cheesboro*.

Hon. Nicholas G. Garaufis
May 5, 2014
Page Six

> This case is different [from trademark and copyright
> cases involving rap music in which expert testimony
> has been allowed] ... The Government offers Wilson's
> lyrics because 'these lyrics, written in the two
> days following the murders of the victims and at a
> time when Wilson knew he was wanted by the police
> for these crimes, constitute a direct and damning
> admission of Wilson's guilt.' [Govt Ltr to Judge
> Garaufis dated Nov. 21, 2006) at 2).   If Wilson
> wishes to argue that the lyrics are impressionistic
> and therefore carry little weight, he may do so.  It
> is the jury's job to determine whether to believe
> such an argument, however, and it would be
> counterproductive to permit an expert to function as
> a "thirteenth juror" in resolving the issue.

Id. at 490.

We respectfully submit the instant case is entirely
distinguishable from the considerations which drove the Court's
analysis in *Wilson*.  In that case, "handwritten lyrics found in the
defendant's pocket upon his arrest that include statements such as
[sic throughout] 'Come teast Rated U Better have that vast and dat
Golock / Leavea 45 slogs in da back of ya head cause I'm getting
date bread I ain't going stop to I'm dead,'" were admitted.  Id. at
490.

Mr. Wilson was charged and convicted of shooting two police
officers in the head during a robbery, and was found with the
lyrics on his person while on the run from the police two days
after the offense.  He was not an established or aspiring rap
artist.

Our client's case is totally different.  Our client has
produced a large body of rap music and related materials, conceived
and created by him in collaboration with managers, producers, and
other performers, some of whom are highly accomplished and
recognized in the field.  They contain extremely violent content,
articulated by him and others.  We are concerned the government's
selections -- incomplete, and taken out of the context of the
entirety of the work -- will be mis-construed, and that the jury
would be aided by a basic grounding in the kind of information an
established scholar of hip hop and gangsta rap music, such as Dr.
Peterson, is able to provide.

As for the government's final argument, namely, that our expert "undertakes to tell the jury to reject particular statements of the defendant as incredible, and by extension, to conclude that the defendant did not, in fact, commit the crimes he discusses on the relevant videos," such position is patently false and far-fetched. (Govt Ltr at p. 3). Once again, the government turns the defense arguments on their head, for in reality, the opposite is true. The proffered expert will <u>not</u> testify the defendant's statements are or are not true. This is borne out by the government itself in its citation to Dr. Peterson's statements in the *Huffington Post* panel discussion. Rather, he will say, in part, they should not be taken as true simply because the defendant says them, because the statements are uttered specifically within the context of gangsta rap music, or materials related to such music. It is respectfully submitted this distinction makes all the difference. If some part or all of the defendant's body of work is admitted by this Court, and if in fact, the prosecutors (i) connect the defendant's statements to specific crimes; (ii) establish to the jury's satisfaction they are indeed admissions; or (iii) proffer other reasonable arguments why the jury should take the statements as true as regards relevant matters in the trial, there is nothing that the expert will do or say that will stop them. He will simply afford the jury a contextual framework which will avoid the jury interpreting the lyrics as a diary or as a "documentary," as they were characterized in Court by the government at a recent status conference.

Simply put, the expert's testimony is necessary because gangsta rap has certain qualities that are unfamiliar to many people. It utilizes violent imagery to a much greater degree than most other music and art forms. Gangsta rappers, by virtue of the form's conventions, are acutely concerned with conveying "authenticity." And such rappers employ the device of fictitious personas to a much greater extent than other musicians.

In sum, to simply allow the defendant's work to be admitted without affording the jury an expert opinion and information as to the complex context from which it derives -- a context, we submit, which is totally outside the ken of the average juror -- will be totally unfair.

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted the government's motion to preclude should be denied in all respects.

Sincerely,

Robert A. Soloway

cc: AUSA Shreve Ariail
    AUSA Samuel P. Nitze
    AUSA Rena Paul

RAS:sc