UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

UNITED STATES OF AMERICA

                  **MEMORANDUM & ORDER**

-against-

                  10-CR-0615 (NGG)

RONALD HERRON,

        Defendant.

----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Before the court are (1) Defendant's Motion in Limine to Preclude Rap Music and Related Video and Audio Content ("Def. Rap Mot." (Dkt. 426)), and (2) the Government's Letter Motion in Limine to preclude the testimony of Defendant's proffered expert ("Gov't Expert Mot." (Dkt. 445)). For the following reasons, both motions are DENIED.

## I. BACKGROUND

The court refers to its March 3, 2014, Memorandum and Order for a fuller recitation of the factual background and charges in this case. (Dkt. 339.) Defendant Ronald Herron is charged in a twenty-three count superseding indictment for criminal activity in connection with his alleged leadership of a criminal enterprise. (See Superseding Indictment (Dkt. 217).) These charges include, among others, racketeering (count one), racketeering conspiracy (count two), murder in-aid-of racketeering (counts five, twelve, and eighteen), conspiracy to distribute narcotics (counts three and eleven), and firearms offenses (counts four, seven, ten, fourteen, twenty, twenty-two, twenty-three). (Id.)

## II. DEFENDANT'S MOTION TO PRECLUDE RAP VIDEOS AND LYRICS

### A. The Video Evidence

Defendant is an aspiring "gangsta rap" artist who has performed under the stage name "Ra Diggs." (Def. Rap Mot. at 1, 4.) Pursuant to Rule 16 of the Federal Rules of Criminal Procedure, the Government produced to Defendant a series of videos featuring him, which fall into two categories: (1) music videos in which Defendant performs rap songs, and (2) videos labeled "Ra Diggs TV – Project Music," which include less formal footage of Defendant addressing the camera, conversing with other people, driving a car, or rapping freestyle or a cappella. (Id. at 1-2.) Defendant characterizes the Ra Diggs TV videos as "promotional materials" (Def. Rap Mot. at 6), while the Government characterizes them as "documentary-style videos" (Gov't Opp'n to Def. Rap Mot. ("Gov't Opp'n") at 10). The Government's production included multiple music videos and thirteen Ra Diggs TV videos (Def. Rap Mot. at 2), collectively referred to in this Order as the "rap-related videos." The videos are each less than ten minutes in length; include references to gangs, violence, and drug dealing; and present images of Defendant displaying gang signs and using firearms. (Id. at 2; Gov't Opp'n at 2.) They contain extensive use of profanity and racial and homophobic slurs. (See Def. Rap Mot. Sealed Exs. A-D.)

Of the rap-related videos, the Government seeks to introduce excerpts of at least eight videos—four music videos and four Ra Diggs TV videos—for various purposes:

> to establish the existence, structure, purpose, methods, and means of the charged Ronald Herron Enterprise; the defendant's role as leader of the enterprise; the relationships of trust among the defendant and his co-conspirators, including several of the government's cooperating witnesses; the defendant's unlawful possession and use of firearms; and specific crimes committed by the defendant to further the goals of the enterprise and to maintain his position as its leader.

(Gov't Opp'n at 3.) The Government provides a brief summary of each proffered video and for most, articulates the specific evidentiary purpose for which it is offered. (See id. at 3-5.) The Government has not specified which segments it plans to use from these eight videos or whether it also seeks to introduce or read into evidence a transcript of their lyrics or dialogue.

Defendant seeks to exclude the rap-related videos and their lyrics "nearly in [their] entirety" on the grounds that (1) they are protected speech under the First Amendment, and (2) that their content is irrelevant, contains hearsay, and is unduly prejudicial under the Federal Rules of Evidence. (Def. Rap Mot. at 4, 6, 15.) Defendant also requests a pre-trial hearing at which the court will view the rap-related videos and hear argument regarding their admissibility. (Id. at 3.) The Government contends that neither ground supports exclusion of the rap-related videos.

## B. First Amendment

Defendant asserts that admission of the rap-related videos into evidence will violate his right to free expression under the First Amendment. (Id. at 6.) Arguing that the rap-related videos are a "commentary on urban crime and violence, drug wars, and the utter lack of hope in the inner city" (id. at 10) and were directed toward the public through internet dissemination, radio plays, and live performances, Defendant contends that they are speech on matters of public concern. (Id. at 6-7.) Defendant maintains that such public speech is entitled to "special protection under the First Amendment" as articulated by Snyder v. Phelps, 131 S. Ct. 1207 (2011). (Def. Rap Mot. at 12-13 (quoting Snyder, 131 S. Ct. at 1219).) The Government contends that Snyder v. Phelps has no bearing on the evidentiary issue before the court. (Gov't Opp'n at 11.)

3

Defendant reads the Supreme Court's holding in Snyder v. Phelps too broadly. That case concerned the imposition of tort liability for the expression of speech itself. Snyder, 131 S. Ct. at 1219 (affirming the lower court's decision to overturn a jury verdict that imposed civil liability for intentional infliction of emotional distress caused by the defendants' picketing of a soldier's funeral). The Court did not address the reach of the First Amendment in connection with the use of speech as evidence in criminal trials. Furthermore, the Court expressly cabined its holding to the facts before it. Id. at 1220 ("Our holding today is narrow. We are required in First Amendment cases to carefully review the record, and the reach of our opinion here is limited by the particular facts before us.").

In the evidentiary context, the Supreme Court has recognized that "[t]he First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993); see also Dawson v. Delaware, 503 U.S. 159, 165 (1992) ("[T]he Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations . . . ."). The Second Circuit has also upheld the use of evidence of political speech or beliefs to prove the existence of a conspiracy and its motive. See United States v. Salameh, 152 F.3d 88, 110, 112 (2d Cir. 1998) (terrorist materials consisting of videos, handwritten notebooks, and literature used as evidence of bombing conspiracy and motive).

Although it creates no blanket prohibition against the introduction of evidence of one's speech or beliefs, the First Amendment nevertheless bars the admission of a defendant's "abstract beliefs . . . *when those beliefs have no bearing on the issue being tried.*" Dawson, 503 U.S. at 168 (emphasis added). Nor may the government introduce a defendant's speech simply to paint that defendant as "morally reprehensible" based on the views expressed. See United

4

States v. Fell, 531 F.3d 197, 229 (2d Cir. 2008) ("The crucial question is whether the evidence at issue was used for permissible purposes or merely to show that [the defendant] was morally reprehensible due to his abstract beliefs." (internal citations and quotation marks omitted)); United States v. Kane, 452 F.3d 140, 142-43 (2d Cir. 2006).

Here, Defendant does not face prosecution for his speech, nor have the rap-related videos been subject to any governmental restrictions or regulations in connection with this case. (Gov't Opp'n at 11.) See United States v. Caronia, 703 F.3d 149, 162-63 (2d Cir. 2012) ("The First Amendment protects against government regulation and suppression of speech on account of its content."). Rather the Government seeks to introduce them as proof of the existence of the alleged criminal enterprise, Defendant's membership and position therein, his association with other members, his familiarity with firearms, and a motive or plan to commit the charged conduct.[1] (See Gov't Opp'n at 3-5.) These proffered purposes go beyond painting Defendant as "morally reprehensible" and certainly have bearing on issues in this case, i.e., charges of racketeering, racketeering conspiracy, murder in-aid-of racketeering, firearms offenses, etc. Therefore the court rejects Defendant's First Amendment argument.[2] See Fell, 531 F.3d at 229.

### C. Rules of Evidence

Defendant also argues that the rap-related videos and their lyrics should be excluded under the Federal Rules of Evidence because their "content is largely irrelevant, laced with hearsay, and when probative, is filled with matters unduly prejudicial." (Def. Rap Mot. at 15.)

---

[1] Defendant concedes that using the videos as evidence of a relationship between Defendant and other individuals relevant to the Government's case would be a proper purpose. (Def. Rap Mot. at 2.)

[2] It should be noted that for the Government to intimate during the trial that Defendant's speech itself constitutes criminal conduct would implicate the First Amendment. See Caronia, 703 F.3d at 161.

5

1. Relevance Under Rule 401

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Federal courts across the country, including those in this circuit, have found rap lyrics or videos to be relevant evidence in criminal trials based on the content of the evidence and the issues in the case.[3] See United States v. Wilson, 493 F. Supp. 2d 484, 488-89 (E.D.N.Y. 2006) (defendant's rap lyrics were relevant because they "describe activity that resembles aspects of the central crime alleged . . . and appear to have been written after that crime was committed"); United States v. Jones, No. 05-CR-322 (NAM), 2007 WL 1428464 (N.D.N.Y. May 11, 2007) aff'd sub nom. United States v. Applins, 637 F.3d 59 (2d Cir. 2011) (defendant's rap lyrics showed his knowledge of the gang alleged to be responsible for the racketeering activity); see also United States v. Stuckey, 253 F. App'x 468, 482 (6th Cir. 2007) (defendant's rap lyrics describing shooting and disposal of bodies in a manner that mirrored the charged crime were relevant); United States v. Foster, 939 F.2d 445, 456 (7th Cir. 1991) (defendant's rap lyrics demonstrated his knowledge of the drug trade and certain drug code words).

However, circuit courts have admonished trial judges against admitting rap videos or lyrics with merely a tenuous connection to the defendant or issues in the case. See, e.g., United States v. Gamory, 635 F.3d 480, 493 (11th Cir. 2011) (rap music video did not feature the defendant nor was evidence introduced that defendant had authored the lyrics or adopted the views expressed in the video); Boyd v. City & Cnty. of S.F., 576 F.3d 938, 949 (9th Cir. 2009) (in civil suit against police for excessive use of force, failure to exclude a portion of victim's rap

---

[3] This is also true at the state level. See, e.g., People v. Medina, No. D038541, 2003 WL 1849316, at *7 (Cal. Ct. App. Apr. 10, 2003) (defendant's rap lyrics relevant to intent); People v. Green, 939 N.Y.S.2d 520, (2d Dep't 2012), leave to appeal denied, 970 N.E.2d 435 (2012) (defendant's rap lyrics relevant to consciousness of guilt, knowledge, and intent).

6

lyrics advocating prostitution was error as it was irrelevant to question of his views and actions toward police).

While some segments of the rap-related videos may not be relevant to the issues in this case, it cannot be said that the evidence is wholly irrelevant under Rule 401. The Government argues—and the partial transcripts provided by Defendant largely confirm—that the videos show Defendant identifying as a member of the Gowanus-based Murderous Mad Dogs, conversing with alleged gang associates, firing weapons, vowing retaliation after an alleged associate is shot by a rival, and bragging that other people will do his bidding.[4] (Gov't Opp'n at 3-5.) Without passing judgment on the truth of these statements or depictions, the court finds the content of the rap-related videos to be generally relevant in this case where the Government must prove the existence and structure of an alleged criminal enterprise and a pattern of criminal activity committed in furtherance of that enterprise.

To the extent that Defendant argues the evidence is not relevant because it comes in the form of music videos and what Defendant characterizes as promotional videos, the court notes that there is no exception for art in the Federal Rules of Evidence.[5] Defendant is free to argue that the videos were designed as entertainment and are the result of creative license, and as discussed below, his expert may opine on the artistic conventions of the genre. However, these issues go to the weight of the evidence not its admissibility. Some content in the rap-related videos is relevant to the charges the Government seeks to prove, and the decision of whether to credit that evidence rests with the jury.

---

[4] The court refers to the lyrics generally, as Defendant's transcripts have been filed under seal. (Def. Rap Mot. at 3 n.1)

[5] Even decidedly fictional works are not bereft of probative evidentiary value. The Seventh Circuit recognized "that there may be instances in which a defendant's fictional writings would be admissible." United States v. Foster, 939 F.2d 445, 456 (7th Cir. 1991). The court further opined in dicta on the propriety of "admitting *The Godfather* to illustrate [Mario] Puzo's knowledge of the inner workings of an organized crime family and admitting 'The Pit and the Pendulum' to illustrate [Edgar Allen] Poe's knowledge of medieval torture devices." Id.

2. <u>Unfair Prejudice Under Rule 403</u>

Relevant evidence may be excluded, of course, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Unfair prejudice is an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Old Chief v. United States, 519 U.S. 172, 180 (1997) (quoting Fed. R. Evid. 403 Advisory Comm. Notes). Evidence with the capacity to "arouse[] jurors' sense of horror" or "provoke[] a jury's instinct to punish" can sometimes be considered unfairly prejudicial. 2 J. Weinstein, M. Berger, & J. McLaughlin, Weinstein's Federal Evidence § 403.04[1]. In this circuit, evidence is not unduly prejudicial when it is not "more inflammatory than the charged crime[s]." United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999); see also United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992) (noting evidence "did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged" (alteration in original)).

Defendant argues that the admission of the rap-related videos will offend the sensibilities of jurors, causing undue prejudice to Defendant. While it is true that the videos contain profanity, misogyny, and references to violence that viewers could find objectionable or shocking, it cannot be said that their content is "more inflammatory" than the charged crimes—three violent murders, narcotics trafficking, weapons possession, and other criminal activity by the alleged enterprise. See Livoti, 196 F.3d at 326. Therefore to the extent that the evidence is probative, it is not substantially outweighed by a danger unfair prejudice.

**D.   Procedures for the Admission of Rap-Related Videos at Trial**

While the court is unconvinced by Defendant's arguments to preclude the "vast bulk" of the rap-related videos, the wholesale admission of the proffered evidence may subject Defendant

8

to unfair prejudice based on the minimal relevance of some portions of the videos. Balancing the competing concerns of Rule 403 in this case demands a more exacting approach than that advocated by either party. The proffered evidence, currently estimated by the Government to be excerpts from eight videos, could be extensive. By contrast, some cases that have previously considered rap lyrics evidence concerned only a few lines or a single verse. See, e.g., Stuckey, 253 F. App'x at 475; Foster, 939 F.2d at 449; Wilson, 493 F. Supp. 2d at 488-89.

Therefore before a rap-related video will be admitted into evidence, the Government shall provide Defendant and the court with the specific excerpt that it intends to present. The Government shall restate the purpose for which the evidence is being offered and submit a transcript identifying the speakers in the clip. If being offered for their truth, statements of unidentified speakers or individuals who are not alleged to be co-conspirators shall generally be excluded as hearsay unless the Government articulates a relevant exception under Rule 803. During the court's in camera review, it will consider whether any hearsay statements are necessary to provide context for the admissible content in the rap-related videos. See United States v. Dupre, 462 F.3d 131, 137 (2d Cir. 2006). Defendant may interpose objections or arguments at this stage.

If the court is satisfied that the clip is limited to the relevant portions of the evidence, it will be admitted. Because "[t]he probative worth of any particular bit of evidence is obviously affected by the scarcity or abundance of other evidence on the same point," Old Chief v. United States, 519 U.S. 172, 85 (1997), the court may exclude as cumulative or redundant rap-related video evidence that goes to a fact that has been firmly established by the Government. See Fed. R. Evid. 403. To the extent that the rap-related videos are admitted into evidence, on application

9

by the objecting party, the court will provide a limiting instruction to the jury that the evidence is not to be considered for any improper purpose. See Fed. R. Evid. 105.

## III. GOVERNMENT'S MOTION TO PRECLUDE DEFENSE EXPERT

The court now turns to the Government's motion in limine to preclude the testimony of Defendant's proposed expert Dr. James Peterson, Ph.D. (See Gov't Expert Mot.) Defendant intends to call Dr. Peterson as an expert witness concerning the rap-related video evidence. (Def. Opp'n to Gov't Expert Mot. ("Def. Opp'n") (Dkt. 449) at 1.) The Government argues that Dr. Peterson's testimony should be excluded in its entirety under Rules 702 and 403 of the Federal Rules of Evidence. (Gov't Expert Mot. at 1.)

### A. Admissibility of Expert Testimony Under Rule 702

Rule 702 governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In Daubert v. Merrell Dow Pharmaceuticals, Inc., the Supreme Court made clear that the district court is charged with the gatekeeping function of "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). To gauge the reliability of proffered testimony, "the district court should consider the indicia of reliability identified in Rule 702," which are not exhaustive. Wills v. Amerada Hess Corp., 379 F.3d 32, 48 (2d Cir. 2004). The district court may consider additional factors identified in Daubert, including (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) in the

10

case of a particular scientific technique, the known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained "general acceptance." Daubert, 509 U.S. at 593-94.

The district court's inquiry into the reliability of expert testimony is "flexible," and Daubert factors are neither exclusive nor dispositive, id. at 594-95; they "neither necessarily nor exclusively appl[y] to all experts or in every case," Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 139 (1999). The district court has "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." Id. at 142.

The burden is on the party proferring the expert to demonstrate that the expert testimony is admissible. Daubert, 509 U.S. at 592; Fed. R. Evid. 702 Advisory Comm. Note. The Second Circuit's standard for admissibility of expert testimony is "especially broad." Clarke v. LR Systems, 219 F. Supp. 2d 323, 332 (E.D.N.Y. 2002) (collecting cases). The rejection of expert testimony is "the exception rather than the rule." Id. (quoting Fed. R. Evid. 702 Advisory Comm. Note). Because Rule 702 "embodies a liberal standard of admissibility for expert opinions, Nimely v. City of New York, 414 F.3d 381, 395-96 (2d Cir. 2005), the court starts with the assumption that a well-qualified expert's testimony is admissible," In re Zyprexa Prods. Liab. Litig., 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007).

### B. Expected Expert Testimony

Dr. Peterson is the Director of Africana Studies and Associate Professor of English at Lehigh University and holds a Ph.D. in English from the University of Pennsylvania. (Curriculum Vitae (Sealed Dkt. 383-1) at 1.) He has written extensively on hip-hop culture, themes, and narratives, including publications in peer-reviewed journals and contributions to encyclopedias and anthologies. (Id. at 2-7.) He has appeared as a commentator on these topics

on national news media. (Id. at 8.) He has also conducted interviews of prominent rap artists such as Snoop Dogg and Nas. (Id. at 1.) Dr. Peterson is expected to testify to the opinion that:

> based on the traditions, patterns, roots, and antecedents of hip hop music, including gangsta rap, that song lyrics and expressions by artists in this medium which are designed to create or develop their image, and / or promote their work, may not be taken as expressions of truth by virtue of being stated or sung by the artist.

(Gov't Expert Mot., Ex. A (Def. Expert Witness Not.) (Dkt. 445-1).) Based on his historical, ethnographic, and linguistic study of hip-hop, Dr. Peterson appears to have specialized knowledge in the subject matter.

### C. The Government's Contentions

In its motion, the Government does not challenge Dr. Peterson's qualifications, but argues that under Rule 702 his opinion (1) cannot be the product of reliable principles or methods, (2) would not be helpful to jurors, and (3) goes beyond the bounds of proper expert testimony. (Gov't Expert Mot. at 3.) In addition, the Government asserts that Dr. Peterson's testimony would waste time and confuse the jury and therefore should be excluded under Rule 403. (Id. at 3-4.)

First, the Government argues that Dr. Peterson's opinion cannot be based on reliable principles or methods to the extent that it "claim[s] that, as a categorical matter, rap lyrics may not be taken as expressions of truth." (Gov't Expert Mot. at 3.) However, as articulated by Defendant, Dr. Peterson holds the more nuanced view that gangsta rap lyrics are not *necessarily* statements of truth, and that due to the conventions of the genre, representations or claims to authenticity, while common, are not necessarily indicators of truthfulness. (See Def. Opp'n at 3-4.) Even the Government concedes that Dr. Peterson's opinion is not so rigid or categorical

(Gov't Expert Mot. at 3), and the court will not characterize his views so narrowly to support a finding of unreliability.

Second, the Government contends that Dr. Peterson's testimony is unnecessary because the concept that music lyrics may be fictional is a "banal truism" not beyond the ken of an average juror. (Id.) However, even seemingly obvious conclusions drawn from an expert's scholarship and specialized knowledge can enhance a lay juror's understanding. See Hnot v. Willis Grp. Holdings Ltd., No. 01-CV-6558 (GEL), 2007 WL 1599154, at *2 (S.D.N.Y. June 1, 2007) (noting while "few jurors will be surprised" by the expert's testimony, "that does not mean the testimony adds nothing to ordinary experience: expert testimony grounded in academic study and practical experience not available to the average layperson can be helpful to the jury"). Many jurors may lack familiarity with gangsta rap, a genre in which artists, Defendant argues, "utilize[] violent imagery .... are acutely concerned with conveying 'authenticity' .... and employ the device of fictitious personas" more so than in other musical forms. (Def. Opp'n at 7.) As such, certain common assumptions concerning the trustworthiness of evidence may not hold for gangsta rap,[6] and Dr. Peterson's testimony could provide context for examining the rap-related video evidence.

Finally, the Government also argues that Dr. Peterson's testimony would be inappropriate as it would instruct the jury to reject Defendant's statements. (Gov't Expert Mot. at 3.) An expert may not testify to "opinions that constitute evaluations of witness credibility." Nimely, 414 F.3d at 398. But this prohibition applies to expert opinion "as to the testimony of other witnesses at the trial," United States v. Scop, 846 F.2d 135, 142 (2d Cir. 1988), whose live

---

[6] For example, the Federal Rules of Evidence presume that a reasonable person will not make a statement that is damaging to his or her self-interest, thus enhancing the reliability of such statements. 5 J. Weinstein, M. Berger, & J. McLaughlin, Weinstein's Federal Evidence § 804.06[1]. In gangsta rap, however, Defendant argues, the inverse may occur; rappers may falsely claim to have committed violent misdeeds in order to present a certain image. (See Def. Opp'n at 2.)

13

testimony and demeanor jurors can assess for themselves, see United States v. Lumpkin, 192 F.3d 280, 289 (2d Cir. 1999). This is not the aim of Dr. Peterson's testimony.

Furthermore the court will cabin the scope of the proposed testimony to reduce the danger of invading the province of the jury. Dr. Peterson may testify as to the history, culture, artistic conventions, and commercial practices of hip-hop or rap music, focusing on gangsta rap. He may cite examples from the genre. However, he may not opine on the truth or falsity of the lyrics or representations in the rap-related videos admitted at trial, or on any of Defendant's other lyrics, nor may he interpret those statements for the jury. See Fed. R. Evid. 702 Advisory Comm. Note ("[I]t might also be important in some cases for an expert to educate the fact-finder about general principles, without ever attempting to apply these principles to the specific facts of the case."). In sum, his testimony may contextualize the evidence and provide general principles, but it is up to jurors to weigh the evidence and assess its credibility for themselves. See United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994) (characterizing an expert's "limited role" as "providing the groundwork in the form of opinion to enable the jury to makes its own informed decision"). The court may also provide a limiting instruction to this effect. The Government may also present its own expert in its case in chief or as rebuttal, provided that person meet Rule 702's requirements and the testimony be limited to the same scope as outlined above.

The court recognizes that admission of the proposed expert testimony may seem novel. However, the study of the traditions and culture of various musical genres is not new, nor can the court dismiss such scholarship as quackery. In a prior criminal trial, the court precluded similar testimony by a different expert, but the relevant evidence in that case consisted of merely three or four handwritten lines of so-called rap lyrics—ostensibly a confession—found in the

defendant's pocket upon his arrest. See Wilson, 493 F. Supp. 2d at 489. Here, there is no doubt that the relevant evidence constitutes rap music videos and related behind-the-scenes or promotional materials that Defendant disseminated online as part of an aspiring rap career. The volume of this evidence admitted at trial will also likely be far greater than the short verse at issue in Wilson. Under these circumstances, a jury could be aided by the background and context that Dr. Peterson could provide. Therefore, the Government's motion is DENIED. Dr. Peterson's testimony shall be conditionally admitted, pending consent by the Government or, in the alternative, a Daubert hearing.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion in Limine to Preclude Rap Music and Related Video and Audio Content is DENIED. The rap-related video evidence shall be admitted subject to the procedures outlined above. The Government's Letter Motion in Limine to preclude the testimony of Defendant's proposed expert is also DENIED. The Government shall advise the court by May 12, 2014, if it will propose its own expert witness on the same subject. By May 13, 2014, the parties shall advise the court as to any further objections to the proposed expert(s). If there are any, a Daubert hearing shall be held on May 15, 2014.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      May _8_, 2014

NICHOLAS G. GARAUFIS
United States District Judge