UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

UNITED STATES OF AMERICA

-against-

RONALD HERRON,

Defendant.

----------------------------------------------------------------X

MEMORANDUM & ORDER

10-CR-0615 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court is the Government's motion in limine to admit evidence of Defendant's prior efforts to tamper with witnesses, destroy evidence, and otherwise obstruct justice, as direct evidence of offenses charged in the Superseding Indictment or, in the alternative, pursuant to Rule 404(b). (Gov't Mem. (Dkt. 424).) On April 30, 2014, the court held a status hearing and directed the parties to submit supplemental briefs. (See Apr. 27, 2014, Min. Entry).[1] For the reasons set forth below, the Government's motion is GRANTED.

I.    BACKGROUND

Although styled as a "Motion in Limine to Admit Evidence of Obstruction," the Government's initial submission consisted of a twelve-page narrative reciting what amounts to a significant preview of its case. The narrative included a recitation of alleged criminal conduct underlying all twenty-three Counts of the Superseding Indictment. (See generally Gov't Mem.) It also summarized various uncharged prior bad acts, including three alleged incidents of obstruction of justice (id. at 6-7, 9-10, 14); three prior state convictions (id. at 4, 6); two additional prior arrests (id. at 10 n.7, 11); a summary of Defendant's disciplinary infractions

---

[1] The court refers to its March 3, 2014, Memorandum & Order for a fuller recitation of the charges and background of this case. (Mem. & Order (Dkt. 399).)

1

while in prison (id. at 8); and description of several incidents involving Defendant's associates (id. at 11-12).

Because it was not clear if in seeking to admit "evidence of obstruction" at trial, the Government sought the admission of only the three incidents labeled as obstruction of justice or of all the above uncharged prior bad acts, the court directed the parties to submit supplemental briefs. (See Apr. 27, 2014, Min. Entry). In its supplemental brief, the Government clarifies that it seeks the admission of the following three incidents. (See generally Gov't Supp. Mem. (Dkt. 448).)

### A. Evidence of Obstruction Following the Murder of Frederick Brooks

On June 16, 2001, Defendant allegedly shot and killed Frederick Brooks, which is charged as several Counts of the Superseding Indictment. (See Superseding Indictment (Dkt. 217).) The Government states that it intends to elicit testimony at trial that in the aftermath of the murder Defendant worked with members of his criminal enterprise to dispose of the firearm he used to kill Brooks. (See Gov't Supp. Mem. at 2.)

In 2001, Defendant was arrested and tried in New York State Criminal Court for the murder of Frederick Brooks. (Gov't Mem. at 6.) The Government represents that on the day of the murder, two eyewitnesses, referred to as Witness A and Witness B, made recorded statements to the Assistant District Attorney, reporting having seen Defendant shoot Brooks in the head. (Id.) Both witnesses later identified Defendant as the shooter in a police lineup and during testimony before a grand jury. (Id.) Later these witnesses refused to testify at Defendant's state criminal trial, and, during material witness proceedings, they recanted their prior statements and stated that they had been threatened by Defendant and his associates. (Id.) The state court found that Herron had procured the unavailability of the witnesses and permitted

2

the prosecution to introduce the witnesses' prior grand jury testimony at trial. (Id.) The Government states that Witness A and B will testify in the instant case that they elected not to testify against Defendant in the state proceedings because Defendant personally threatened them. (Gov't Supp. Mem. at 2.)

Furthermore, the Government represents that Defendant instructed at least one other potential witness, Witness C, who understood that Defendant would have sought to kill him had he agreed to testify against him, to lie about Defendant's role in the murder. (Gov't Mem. at 6.) The Government states that it intends to call Witness C to testify that Defendant instructed him to lie about Defendant's involvement in the Brooks murder. (Gov't Supp. Mem. at 2.) The Government also notes that Witness D testified at the state trial that he saw Defendant kill Brooks, but refused to identify him from the stand for fear of retaliation. (See Gov't Mem. at 7.) It is not clear if the Government intends to call Witness D at trial.

Finally, the Government states that it plans to call additional unidentified witnesses to testify that, while in jail awaiting the state criminal trial, Defendant sent members of his crew to threaten witnesses who were expected to testify against him. (Gov't Supp. Mem. at 2.)

**B.     Evidence of Obstruction Following the Murder of Richard Russo**

On May 9, 2008, Defendant allegedly shot and killed Richard Russo, which is charged as several Counts of the Superseding Indictment. (Gov't Mem. at 9-10.) The Government states that Witness C, one of his crew members, will testify that after the murder, Defendant provided him with cash in an effort to keep him from approaching police. (Id.; Gov't Supp. Mem. at 2.) Witness C will also testify that Defendant made efforts to eliminate forensic evidence and disposed of the firearm that Defendant had used to kill Russo. (Gov't Mem. at 9-10; Gov't Supp. Mem. at 2.)

3

### C. Additional Evidence of Obstruction of Justice

In addition to the above, the Government intends to offer testimonial and physical evidence to establish that Defendant publicly warned members of his organization and the public, through social media and other means, of the consequences of providing information to law enforcement regarding Defendant and the enterprise's involvement in criminal activities. (Gov't Mem. at 14; Gov't Supp. Mem. at 2.) The Government also intends to call a witness to testify that in one instance, Defendant threatened to kill a member of his enterprise based on a mistaken belief that he had provided information to law enforcement about Defendant. (Gov't Mem. at 14.)

## II. THE PARTIES' CONTENTIONS

### A. The Government's Motion

The Government argues that even without relying on Federal Rule of Evidence 404(b), evidence of Defendant's efforts to obstruct justice, through the destruction of evidence and witness tampering, is admissible as substantive proof (1) of the elements necessary to prove the existence of the racketeering enterprise (Gov't Mem. at 16); (2) of overt acts necessary to prove a narcotics conspiracy (id. at 17); and (3) of the murders (Gov't Supp. Mem. at 2). With respect to the racketeering counts, the Government argues that the uncharged acts of obstruction of justice are probative of "(1) the existence of the charged criminal enterprise; (2) Herron's role at the top of the enterprise; (3) the enterprise's efforts to '[p]reserv[e] and protect[] the power, territory and criminal ventures of the enterprise through the use of intimidation, threats of violence and acts of violence,' . . . ; and (4) the enterprise's ability to '[k]eep[]victims and rivals in fear.'" (Gov't Mem. at 18 (citing Superseding Indictment).) The Government adds that even

4

where it does not directly establish an element of the charged offenses, the evidence is admissible to provide necessary narrative background for events alleged in the indictment. (Id.)

In the alternative, the Government contends that the evidence of obstruction of justice is admissible pursuant to Rule 404(b). (Id. at 20.) The Government argues—without elaborating—that it seeks to introduce evidence of Defendant's tampering with witnesses and destruction of evidence to prove intent, plan, and absence of mistake. (Id.)

### B. Defendant's Opposition

Defendant responds that the Government has provided insufficient details for defense counsel or the court to address the admissibility of the evidence. (Def. Mem. in Opp'n (Dkt. 431); Def. Supp. Mem. (Dkt. 449).) According to Defendant, the Government has failed to specify a particular basis of admissibility for each particular prior bad act and failed to indicate the form that the evidence will take, leaving Defendant unable to object sufficiently. (Def. Mem. in Opp'n at 4.) Defendant complains that the absence of such detail makes it impossible for the defense to formulate arguments in support of standard evidentiary objections, such as arguments that the evidence is inadmissible hearsay, inflammatory, unnecessarily cumulative or "simply too unreliable to pass the threshold of relevancy." (Id.) Defendant cites no legal authority to support his propositions in either his initial responsive brief or his supplemental one.

Defendant also makes specific objections pertaining to each incident of alleged obstruction of justice. With regard to the witness tampering following the Brooks murder, Defendant argues that the Government's representation is insufficient because it does not identify the witnesses, set forth their basis of knowledge, or establish whether individuals who allegedly made threats were acting at Defendant's direction. (Def. Supp. Mem. at 1.) Defendant also argues that he is entitled to know if the Government seeks the admission of the grand jury

5

transcripts of Witnesses A and B, which were admitted in the state criminal trial. (Def. Mem. in Opp'n at 4.)

With respect to the witness tampering following the Russo murder, Defendant contends that the Government has failed to provide information about Witness C, who will testify that after the murder Defendant provided cash to him in an effort to keep him from approaching police. (Id.) In addition, Defendant argues that the prosecution improperly declines to identify the forensic evidence which Defendant allegedly sought to eliminate after the Russo murder. (Def. Supp. Mem. at 2.)

Finally, regarding the Defendant's alleged additional warnings through social media and otherwise against cooperation with law enforcement, Defendant again argues that the Government's submission improperly omits the timing of the warnings, the type of social media, the manner in which these messages were created and transmitted, and the contents of the message. (Id. at 2; Def. Mem. in Opp'n at 4.)

## II.   SCOPE OF THE INSTANT ORDER

Although the court agreed with Defendant's argument regarding the insufficiency of the Government's opening brief (see Apr. 30, 2014, Min. Entry), the court is satisfied by the Government's supplemental submission. In its supplemental brief, the Government restates that the subject of its motion is limited to the three incidents of obstruction delineated above (see Gov't Supp. Mem. at 1-2.), and it is evident from Defendant's supplemental responsive brief that at present the dispute concerns only these incidents (see Def. Supp. Mem.). As a result, the instant Order is limited to the narrow question of the admissibility of these three incidents of obstruction of justice as direct proof of charged conduct or pursuant to Rule 404(b).[2]

---

[2] This Order does not address the prior state convictions, prior arrests, disciplinary infractions in state prison, or incidents involving other associates, which were discussed in the Government's opening memorandum.

In light of the scope of this Order, the court also concludes that the Government has provided a sufficient proffer of the evidence it intends to present at trial to enable the court to render decision. Defendant does not cite any authority that requires the Government to provide a full proffer of its intended evidence for the purpose of the instant motion in limine. To the extent that Defendant has objections to the Government's production of discovery material, he is of course free to bring those objections to the attention of the court. Furthermore, Defendant is in no way impeded from making standard evidentiary objections at trial.

## III. DISCUSSION

### A. Direct Proof of Charged Crimes

The Government is permitted to introduce evidence of uncharged misconduct—without relying on Rule 404(b)—in order to prove the crimes charged in the indictment. See, e.g, United States v. Concepcion, 983 F.2d 369, 392 (2d Cir. 1992). In addition, evidence of uncharged conduct is not considered "other acts" evidence under Rule 404(b) if it "[1] arose out of the same transaction or series of transactions as the charged offense, [2] if it is inextricably intertwined with the evidence regarding the charged offense, or [3] if it is necessary to complete the story of the crime on trial." United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (quoting United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997)). Such evidence is instead "direct" evidence of the charged crime. See United States v. Nektalov, 325 F. Supp. 2d 367, 370 (S.D.N.Y. 2004). "However, 'where it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b).'" United States v. Townsend, No. 06-CR-34 (JFK), 2007 WL 1288597, at * 1 (S.D.N.Y. May 1, 2007), aff'd sub nom. United States v. Mercado, 573 F.3d 138 (2d Cir. 2009). The district court has wide discretion in making this determination. Id.

7

In this case, Defendant is charged with participating in racketeering and racketeering conspiracy (Counts 1 and 2); conspiracy to distribute cocaine base (Count 3); unlawful firearms possession in furtherance of narcotics conspiracy (Count 4); the murder of Frederick Brooks (Counts 5-8); robbery of narcotics and narcotics proceeds (Count 9); unlawful firearm possession in furtherance of robbery (Count 10); conspiracy to distribute heroin (Count 11); the murder of Richard Russo (Counts 12-15); the attempted murder of John Doe # 4 (Count 16); the conspiracy to murder and murder of Victor Zapata (Counts 17-21); and two counts of possession of a firearm (Counts 22-23). (See generally Superseding Indictment.)

The Second Circuit has concluded that where, as here, the defendant has been charged with racketeering or racketeering conspiracy, other acts may be used as direct evidence of the existence of the enterprise and to establish the pattern of racketeering activity, without invoking the restrictions of Rule 404(b). See, e.g., United States v. Coppola, 671 F.3d 220, 244 (2d Cir. 2012), cert. denied, 133 S. Ct. 843 (2013) (evidence of unlawful Genovese and Gambino activity that was distinct from the charged predicates admissible to prove both the "enterprise" and "pattern" elements of the charged racketeering crimes); Concepcion, 983 F.2d at 392 (evidence of the defendant's offer to kill another admissible to prove "concern for the [RICO enterprise]'s retail operations and the lengths to which [the defendant] would go to defend them"); United States v. Angelilli, 660 F.2d 23, 39 (2d Cir. 1981) (evidence of custom and practice admissible to prove the continuing nature of the RICO conspiracy).

In this case, the expected testimony regarding the alleged obstruction of justice following the homicides of Frederick Brooks and Richard Russo is probative of the racketeering charged in the Superseding Indictment. To prove racketeering, the Government must establish that Defendant engaged in "a pattern of racketeering activity," 18 U.S.C. § 1962, which the Second

8

Circuit has interpreted this to mean "multiple racketeering predicates—which can be part of a single 'scheme'—that are related and that amount to, or threaten the likelihood of, continued criminal activity," United States v. Reifler, 446 F.3d 65, 91 (2d Cir. 2006) (quoting United States v. Coiro, 922 F.2d 1008, 1016 (2d Cir.), cert. denied, 501 U.S. 1217 (1991)). The Supreme Court has also held that "to prove a pattern of racketeering activity a . . . prosecutor must show [1] that the racketeering predicates are related, and [2] that they amount to or pose a threat of continued criminal activity." See H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989).

The evidence of witness tampering and destruction of evidence following the Brooks and Russo murders has a tendency to show that these murders, which are also charged as individual racketeering acts and separate counts in the Superseding Indictment, were not isolated homicides. Rather, this evidence of obstruction of justice shows that they were "related" to the criminal enterprise and, to a lesser extent, to each other because they were part of Defendant's systematic efforts eliminate rivals while avoiding prosecution. These two incidents, as well as the more generalized evidence of witness intimidation through social media, are also probative of the "continuous" nature of Defendant's conduct because such obstruction of justice enabled the racketeering activity to continue unabated. Finally, since the evidence used to establish the "pattern" of racketeering "may in particular cases coalesce" with evidence of the existence of the enterprise, see United States v. Turkette, 452 U.S. 576, 583 (1981), the evidence of obstruction of justice is also probative of the enterprise's efforts to "[p]reserv[e] and protect[] the power . . . and criminal ventures of the enterprise through the use of intimidation, threats of violence and acts of violence," and the enterprise's ability to "[k]eep[] victims and rivals in fear."

9

(Superseding Indictment at 2-3.) In sum, this evidence is undoubtedly admissible as direct proof of racketeering and racketeering conspiracy charged in the Superseding Indictment.

### B. Rule 403 Balancing

The court is also satisfied that the evidence of obstruction has a probative value that is not substantially outweighed by the dangers identified in Rule 403, such as undue prejudice. See Fed. R. Evid. 403. In this circuit, evidence is not unduly prejudicial when it is not "more inflammatory than the charged crime[s]." United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999); see also United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992) (noting evidence "did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged" (alteration in original)). The testimony about the destruction of evidence and witness intimidation is certainly not "more inflammatory" than the charged crimes—three violent murders, narcotics trafficking, weapons possession, and other criminal activity by the alleged enterprise. See Livoti, 196 F.3d at 326. The court has considered the other risks identified in Rule 403—the danger of confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence—and concludes that these risks do not substantially outweigh the probative value of Defendant's consciousness of guilt.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS the Government's Motion in Limine to Admit Evidence of Obstruction.

SO ORDERED.

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

Dated: Brooklyn, New York
       May 12, 2014