UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

UNITED STATES OF AMERICA,

-against-

RONALD HERRON,

**JURY CHARGE
FINAL – 6/24/2014
10-CR-615 (NGG)**

Defendant.
-----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

  Now that the evidence in this case has been presented and the attorneys for the

Government and the Defendant have concluded their closing arguments, it is my responsibility to

instruct you as to the law that governs this case.  My instructions will be in three parts:

  <u>First</u>:  I will instruct you regarding the general rules that define and govern the duties of a

jury in a criminal case;

  <u>Second</u>:  I will instruct you as to the legal elements of the crimes charged in the

Indictment — that is, the specific elements that the Government must prove beyond a reasonable

doubt to warrant a finding of guilt; and

  <u>Third</u>:  I will give you some general rules regarding your deliberations.

  Statutory language quoted in this Final Charge is set forth in bold lettering.



1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

RONALD HERRON,
     also known as "Ra," "Ra Diggs,"
     "Ra Digga" and "Raheem,"

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

10-CR-615 (S-6) (NGG)

<u>VERDICT SHEET</u>

## COUNT ONE
### (Racketeering)

How do you find the defendant RONALD HERRON as to Count One?

_____ GUILTY          _____ NOT GUILTY

*If you answered "Guilty," please indicate whether the following Racketeering Acts were proved beyond a reasonable doubt or not proved beyond a reasonable doubt. If you answered "Not Guilty," please proceed to Count Two.*

## <u>Racketeering Act 1</u>
### (Cocaine Base Distribution Conspiracy)

_____ PROVEN          _____ NOT PROVEN

*If you find Racketeering Act One proven, answer the following question:*

Do you find that the Government proved beyond a reasonable doubt that the defendant Ronald Herron knew that the controlled substance which he conspired to distribute and possess with intent to distribute contained cocaine base?

_____ PROVEN          _____ NOT PROVEN

1



COURT'S
EXHIBIT NO. 11
IDENTIFICATION/EVIDENCE
DKT.# _____
DATE: _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

    UNITED STATES OF AMERICA,

        -against-

    RONALD HERRON,

                  Defendant.
-------------------------------------------------------------------X

**JURY CHARGE**
**FINAL (REVISED) – 6/25/2014**
**10-CR-615 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

       Now that the evidence in this case has been presented and the attorneys for the Government and the Defendant have concluded their closing arguments, it is my responsibility to instruct you as to the law that governs this case.  My instructions will be in three parts:

       <u>First</u>:  I will instruct you regarding the general rules that define and govern the duties of a jury in a criminal case;

       <u>Second</u>:  I will instruct you as to the legal elements of the crimes charged in the Indictment — that is, the specific elements that the Government must prove beyond a reasonable doubt to warrant a finding of guilt; and

       <u>Third</u>:  I will give you some general rules regarding your deliberations.

       Statutory language quoted in this Final Charge is set forth in bold lettering.



COURT'S
EXHIBIT NO. 12
IDENTIFICATION/EVIDENCE
DKT.# _____
DATE: _____
PENGAD 800-631-6989



20          THE WITNESS:  And there was two more people, too.

21   Q    Did you say there were two more people there?

22   A    Yeah.  There was Lydia and her cousin.  They was on that

23   side where Darnell was standing at.

24   Q    I'm sorry, I couldn't hear that, who were the two people

25   you saw?

8   Q    All right, who is Lydia?

9   A    The lady that live on the first floor.

10  Q    You saw Lydia and the other person.  They were there at

11  the same time as the other three?

12  A    Yes, they was.

Figueroa - direct - Paul                                    2910

COURT'S
EXHIBIT NO. 19
IDENTIFICATION/EVIDENCE
DKT. #
DATE:

Q    What kind of drugs did the defendant bring out and give

to the other person to give to you?

A    Heroin.

Q    What quantity of heroin?

A    A couple of bundles, like $10 bags.

Q    What's a bundle?

A    A bundle is like 10, 10 -- ten bags of $10.  Like, each

bag is $10.  He gave me ten bags of -- ten of 10, and it was

wrapped up in rubber bands and they was inside of a little

baggie.

Q    What was the financial arrangement at this point to sell

those drugs?

A    I was to sell the drugs, give the money to the guy until

I paid back all the money that I owed and I got no cut.

Q    Did you speak about how long you would have to continue

selling drugs for the defendant?

A    No, I did not.  I just didn't want him to kill me.  I

CMH        OCR        RMR        CRR        FCRR

Figueroa - direct - Paul                    2911

1   just did what he told me to do.

2   Q    What happened?

3   A    I sold it, I was selling the drugs in the building, and

4   while I was selling the drugs in the building with the guy

5   that had the gun, I sold to an undercover cop which I didn't

6   know at the time.  So when I was even out of the building

7   walking toward Wyckoff and Nevins where Ra and them was parked

8   in the Navigator, the police ran down on me and they grabbed

9   me and when they searched me, they found the drugs and I was

10  taken to the precinct.

11  Q    You said that you were selling drugs in the building?

12  A    Yes.

13  Q    What do you mean?

14  A    I was selling in the lobby of 272.  And then when I left

15  out of the lobby and was walking toward Nevins Street, the

16  police ran and grabbed me.

17  Q    And you said you had been selling in 272 but you had been

18  selling crack?

19  A    Yes.

20  Q    Was there any issue with the defendant having you sell

21  heroin in that building?

22  A    There was no one selling heroin in that building.  They

23  was only selling crack cocaine and there was nobody in the

24  lobby at that time.

25  Q    And you said there was the guy with the gun.  Where did

CMH        OCR        RMR        CRR        FCRR

Figueroa - direct - Paul                2912

1   he go when you were selling drugs?

2   A    He was walking in front of me and I was walking with the

3   customer.  So when I was walking with the customer, talking to

4   the customer, the police rolled up in the two vans, they

5   grabbed me.  They searched the customer and didn't find

6   anything so they let her go, but they found the drugs on me

7   and they immediately turned me around, put me in handcuffs and

8   brought me to the 88th Precinct.

9   Q    Do you know how many sales you made that day for the

10  defendant?

11  A    No, not exactly.

1

2

3

4

5

6

7

8

9    Q    Okay.  And then in March of 2008, you said you are on the

10   street for two months, right?

11   A    Yes.

12   Q    From about March 6th, thereabouts, 2008, to May 6, 2008,

13   when you get arrested in 272 Wyckoff selling drugs, right?

14   A    Yes.

15   Q    So at that point, in 2008, you go into custody.  You said

16   were ROR'd on the buy and bust, right?

17   A    Yes.

18   Q    Because that's what happened in 272 Wyckoff, right?

19   A    Yes.

20   Q    You made a sale to an undercover police officer of a

21   quantity of heroin for money, right?

22   A    Yes.

23   Q    In that situation, it was marked money, right?

24   A    Yes.

25   Q    And when they arrested you, the backup -- it's not the

Figueroa - cross - Soloway                2981

1

2

3

4    Q    Now          most recent incarceration of yours is the

5    pr           the arrest of, you said, May 6, 2008?

6           ay that again.

     Q    This most recent incarceration of yours is the product of

8    this May 6, 2008 arrest that happens at 272 Wyckoff; right?

9    The buy-and-bust; right?

10   A    Yes.

11   Q    The heroin sale?

12   A    Yes.

13   Q    272 is one of the three large buildings in the Wyckoff

14   Gardens housing project; right?

15   A    Yes.

16   Q    And you sold heroin to an undercover police officer;

17   right?

18   A    Yes, I did.

19   Q    And you said that the reason you were selling heroin to

20   undercover police officers was because of this abduction of

21   you by Ronald Herron -- right?

22   A    Yes.

23   Q    -- and these other people; right?  Right, you said there

24   were other people with him; right?

25   A    Yes.

Figueroa - cross - Soloway                  2982

1   Q     You said you were, on your direct, forced into a car;

2   right, at gunpoint?

3   A     Yes.

4   Q     That you were forced to sell drugs; right?

5   A     Yes.

6   Q     And that while you were there at 272 selling drugs,

7   272 Wyckoff, there was actually someone there, one of these

8   people, kind of holding a gun on you, posted there; right

9   A     Yes.

10  Q     Make sure you sold drugs, I guess; right?

11  A     Yes.

12  Q     And what about Ronald Herron?  Where was he during this

13  time?

14  A     He was on the corner of Wyckoff and Nevins.

15  Q     So, he was on the corner of Wyckoff and Nevins.  If you

16  were at 272 Wyckoff, if you walk out the front door of

17  272 Wyckoff, you are on Wyckoff Street

18  A     Yes.

19  Q     Nevins would be to your left?

20  A     Yes.

21  Q     Third Avenue is to your right?

22  A     Yes.

23  Q     Herron was to your left on the corner of Nevins and

24  Wyckoff; right?

25  A     Yes.

Figueroa - cross - Soloway                     2983

1   Q    This other guy that you said was there that had the gun,

2   where was he?

3   A    He was in the lobby with me.

4   Q    So, he was in the lobby making sure you were doing what

5   you were supposed to do?

6   A    Yes.

7   Q    Okay.  Now, when you got arrested, this was by this

8   backup team that was part of this buy-and-bust operation;

9   right?

10  A    Yes.

11  Q    Some officers came?

12  A    Yes.

13  Q    Did you tell the police who arrested you that you were

14  selling drugs only because you were forced to sell drugs?

15  A    Yes.

16  Q    You told them that?

17  A    Yes.

18  Q    At the time that you were being supervised on parole, you

19  had a parole officer by the name of McCorvey; right?

20  A    I'm not sure.

21  Q    Now, is it fair to say that whoever the parole officer

22  was that you had, that as a result of your arrest on May 6 of

23  2008, that you were violated ultimately on your parole?

24  A    Yes.

25  Q    And when you were -- and you had a parole hearing on

Figueroa - cross - Soloway                    2984

1    that, too; right?

2    A    Yes.

3    Q    And you pled guilty to the sale of heroin in that case;

4    right?

5    A    Yes.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Figueroa - recross - Soloway                    3016

Q       By May of 2008 when you were selling drugs inside 272
Wyckoff, you were still in the neighborhood, right?

A       Yes.

Q       And you are saying that he forced you at gunpoint to sell
drugs, right?

A       Yes.

Q       And actually posted some people who you can't identify
except that they are Spanish people to guard you and make sure

GR      OCR      CM      CRR      CSR

Figueroa - recross - Soloway                3017

1   that you did that for him, right?

2   A    Yes.

3   Q    That's because he didn't have anybody else that day that

4   was around to sell drugs for him?

5   A    I -- go ahead.

6   Q    Say again?

7   A    No.  Go ahead.  I'm sorry.

8   Q    I mean, were all the other drug dealers on vacation at

9   that period of time, that particular day?

10  A    No.

11  Q    No.

12            And he had this quantity of heroin you say that he

13  wanted to get sold, right?

14  A    Yes.

15  Q    And he couldn't sell it himself?

16  A    I never seen him sell drugs his self.

17  Q    How about the two Spanish guys that he was with, were

18  they capable of selling drugs?

19  A    I never seen them sell drugs before.

20  Q    How about any of all these other people that you were

21  saying were selling drugs for him?

22            Was Crystal Lewis around that day?

23  A    I don't know.  I didn't see her that day.

24  Q    But he had to get you and abduct you at gunpoint to sell

25  drugs for him in 272 Wyckoff?

GR        OCR        CM        CRR        CSR

Figueroa - recross - Soloway                    3018

1    A    That's what happened.

2    Q    You are someone that he really wanted, right?

3    A    Yes.

4    Q    So someone that he really can't stand is the person that

5    he wants to get to sell these narcotics for him, right?

6    A    No.

7    Q    That's what you said happened, right?

8              He can't stand you but he abducts you at gunpoint

9    and forces you to sell his drugs for his money in 272 Wyckoff,

10   right?

11   A    It's not the first time.

12   Q    Ms. Paul asked you some questions about what you told

13   your parole officer about why you were selling drugs in 272

14   Wyckoff and I think there is a little bit of confusion here

15   about what I am asking you.  So let me try to make it clear.

16             Isn't it correct that you told your parole officer

17   at the point at which you were interviewed by your parole

18   officer, I think it was something like May 20th, that when you

19   were selling drugs at 272 Wyckoff, it was because Ronald

20   Herron forced you to do it?

21   A    Yes.

22   Q    That's what you told your parole officer, right?

23   A    Yes, I did.

24   Q    But isn't it fair to say that you didn't tell anything

25   like that to the police who arrested you on May 6th, 2008?

GR      OCR      CM      CRR      CSR

Figueroa - recross - Soloway                    3019

1    A    I told them too.

2    Q    Yes.

3              But really, what you did after you had time to think

4    about it, that's when you invented the story that you told

5    your parole officer about why you were selling drugs at 272

6    Wyckoff on May 6th?

7

8

9    A    I told my parole officer the same thing I told the

10   officers when I first got arrested.

11

12

13

14

15   Q    Now, when you were speaking to your parole officer in May

16   of 2008 about these drug sales or the drug sale that you made

17   on May 6, 2008, you didn't bother to tell your probation --

18   your parole officer that you were selling drugs constantly

19   from the day you got out on March 6th to May 6, 2008, right?

20   A    No, I did not.

21   Q    You just talked to him about the buy and bust that you

22   got caught for on May 6, 2008, at 272 Wyckoff?

23   A    Yes.

24   Q    You told them, oh, that sale that I made on May 6, 2008,

25   I made that sale because I was forced by Ronald Herron to do

GR      OCR      CM      CRR      CSR

Figueroa - recross - Soloway                    3020

1    that, right?

2    A    Yes.

3    Q    But you didn't tell them that you were selling drugs for

4    two months before that, in these other locations, in Bushwick

5    and Wyckoff, right?

6    A    No, I did not.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

GR       OCR       CM       CRR       CSR

Figueroa - redirect - Paul                    3023

Q    Mr. Soloway was asking you what the defendant was, who

the defendant was having sell for him.  Why did you sell the

heroin in 272 Wyckoff that day?

A    I had no choice.

Q    Why?

A    It was either die or sell the drugs.  That's how I felt.

Q    That was because you owed him a debt --

A    Yes.

Q    -- in his mind?

CMH       OCR       RMR       CRR       FCRR

Figueroa - redirect - Paul                3024

1    A    Yes.

6/26/14

To the jury:

You are provided herewith a corrected copy of Gov't. Exhibit 404D containing clip you requested in your earlier note. You should be able to view the video without further assistance. Please return the other copy of 404D to Mr. Reccoppa. If you have difficulty viewing any other portions of the videos in evidence please advise me. Thank you.

Judge SINGG

COURT'S
EXHIBIT NO. 21
IDENTIFICATION/EVIDENCE
DKT.# _____
DATE: _____